UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD GOSZTYLA, | No. 2:21-cv-01403-DJC-EFB (PC) |
| Plaintiff, | |
| v. | <u>FINDINGS AND RECOMMENDATIONS</u> |
| MICHAEL FRENCH, et al., | |
| Defendants. | |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. He filed this action on August 6, 2021. ECF No. 1. On November 8, 2021, pursuant to 28 U.S.C. § 1915A(a), the court determined that plaintiff's complaint alleged potentially cognizable Eighth Amendment claims for excessive force against defendants French, Pfeifer, and Burnette. ECF No. 7. All other claims were dismissed with leave to amend. *Id.* Plaintiff opted not to amend his complaint. ECF No. 10. Now before the court is defendant French's motion for summary judgment on the ground that he used no force on plaintiff. For the reasons that follow, the motion for summary judgment must be denied.

**I.      The Complaint**

Plaintiff is currently housed at CSP Corcoran. The alleged events underlying plaintiff's complaint concern his arrest on March 9, 2018 by Detectives Michael French, Nathan Burnette,

1

Paul "Scott" Pfeifer, and Jose "Joey" Lemus of the Sacramento County Sheriff's Department. ECF No. 1. According to plaintiff's complaint:

> Upon being arrested by the Sacramento County Sheriff's, the plaintiff received numerous injuries, including: cracked and or broken ribs, a laceration to the head, and a gun butt to the head. This was done for no other reason save to inflict maximum damage to the plaintiff for the police having to locate him and his wife, as well as the charges plaintiff was facing.

*Id.* at p. 3.

## II.  Summary Judgment Standard

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'").

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a

genuine factual dispute, the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence and draws inferences most favorably for the opposing party.  *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *Am. Int'l Group, Inc. v. Am. Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

Concurrent with his motion for summary judgment, defendant French advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  ECF No. 52-1; *see Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999).

### III.     Undisputed Facts

The parties do not dispute the following relevant facts.  Plaintiff was arrested on March 9, 2018.  ECF No. 52-4, Declaration of Wendy Motooka (Motooka Decl.), Ex. C.  Plaintiff sustained injuries during his arrest, including cuts, abrasions, and lacerations.  *Id.*  Defendant French did not personally use force on plaintiff.  *Id.*; *see also* ECF No. 52-5, Declaration of Michael French (French Decl.) at ¶¶ 15-17.  Defendant French arrested plaintiff's wife.  *Id.*

### IV.     Analysis

Defendant French seeks summary judgment on the ground that he used no force at all on plaintiff during plaintiff's arrest.  Plaintiff counters that even if defendant French did not use

excessive force himself, he was required to intervene when the other officers present allegedly used excessive force when arresting plaintiff.

Claims of excessive force in performing an arrest are analyzed under the Fourth Amendment's reasonableness standard. *Graham v. Connor*, 496 U.S. 386, 395 (1989). Under this standard, a court must decide "whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Id.* at 397.

Generally, liability for an individual under section 1983 normally arises only if that individual personally participated in the unconstitutional act. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *Jones v. Williams*, 297 F.3d 930, 936 (9th Cir. 2002). Simply "watching others violate the Constitution" does not render a defendant liable under section 1983. *Peck v. Montoya*, 41 F.4th 877, 889 (9th Cir. 2022). Nonetheless, a defendant law enforcement officer who has not personally participated in the application of excessive force may be liable under section 1983 if she or he: 1) had "a duty to intervene to prevent an ongoing constitutional violation"; or 2) was an "integral participant" in the unlawful act. *Id.* As discussed below, although plaintiff's factual assertions fail to meet the integral participation avenue, he has shown a genuine dispute as to a duty to intervene claim.

### A. Integral Participation

A defendant may be liable under the integral participation theory if she or he "(1) knows about and acquiesces in the constitutionally defective conduct as part of a common plan with those whose conduct constitutes the violation or (2) the defendant 'set[s] in motion a series of acts by others which [the defendant] knows or reasonably should know would cause the others to inflict the constitutional injury.'" *Peck*, 51 F.4th at 889 (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

Plaintiff has not argued that defendant French – despite the lack of his direct participation – is liable as an integral participant in the alleged excessive force during plaintiff's arrest. Furthermore, a review of the record does not reveal any evidence tending to suggest that defendants had a common plan to use excessive force against plaintiff. In addition, plaintiff has not alleged – and the record does not suggest – that defendant French set into motion a series of

acts that he knew or should have known would cause the other officers to use excessive force against plaintiff. Accordingly, integral participation is not a viable theory of liability for the actions (or lack thereof) of defendant French.

### B. Failure to Intervene

It is well-settled that failure to intervene can support an excessive force claim when a bystander-officer has a realistic opportunity to intervene but fails to do so. *Lolli v. County of Orange*, 351 F.3d 410, 418 (9th Cir. 2003); *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2002); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995). "[P]olice officers have a duty to [intervene] when their fellow officers violate the constitutional rights of a suspect or other citizen." *Cunningham v. Gates*, 229 F.3d 1271, 1289 (9th Cir. 2000). To be held liable for failure to intervene, an officer must have had a "realistic opportunity" to do so. *Id.* at 1290; *see also Garlick v. County of Kern*, 167 F. Supp. 3d 1117, 1161 (E.D. Cal. 2016). If an officer is "merely a bystander", there can be no liability under section 1983. *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009) (citation omitted). Moreover, "if a constitutional violation occurs too quickly, there may be no realistic opportunity to intercede to prevent the violation." *Freeland v. Sacramento City Police Dep't,* 2010 WL 408908, at *5 (E.D. Cal. Jan 29, 2010) (citing *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1159-60 (N.D. Cal. 2009)). Therefore, "[t]o state a claim for failure to intervene, Plaintiff must allege circumstances showing that [the defendant] had an opportunity to intervene and prevent or curtail the violation (e.g. enough time to observe what was happening and intervene to stop it), but failed to do so." *Gonzales v. Cate*, 2011 WL 1332174, at *3 (E.D. Cal. Apr. 5, 2011).

Defendant French maintains that he was neither aware of a need to intervene or presented with a reasonable opportunity to intervene in the alleged excessive force. He argues that, although he was in the same room with plaintiff and the other arresting officers, he was focused on arresting and securing plaintiff's wife, who was also wanted on a $6 million bail warrant. ECF No. 52-5 at ¶¶ 6, 15-18. Defendant relies both on his declaration (ECF No. 52-5) and on plaintiff's deposition in support of his argument. ECF No. 52-4, Ex. C. In his declaration, defendant states that while he was handcuffing plaintiff's wife, "[t]he other detectives were

6

1  behind me, dealing with Richard [plaintiff]. I did not see the actions taken by the detectives to
2  get Richard into handcuffs." ECF No. 52-5 at ¶ 16.
3      Defendant also argues that the following excerpt from plaintiff's deposition confirms that
4  plaintiff did not see defendant French until both arrests were completed, and both plaintiff and his
5  wife were handcuffed, and thus that there is no evidence that defendant French observed
6  plaintiff's arrest or had an opportunity to intervene in it.

7  Q. Okay. How do you know that the officer securing your wife was watching?
8  A. Because when I was able to see, I saw him looking at us.
9  Q. When were you able to see? At what point – what was happening the first time
10         you were able to see the other officer who was securing your wife?
11 A. When I was handcuffed.
12 Q. So after – after the force was no longer being used?
13 A. After I was handcuffed, I could see that he was standing there looking at us.
14 Q. And your wife was handcuffed at that time?
15 A. Yes.

16 ECF No. 52-4, Ex. C at p. 43.
17      Plaintiff counters that other evidence in the record supports a finding that defendant
18 French did in fact observe plaintiff's arrest and the alleged excessive force. Specifically, plaintiff
19 points to defendant French's arrest report, which states in relevant part:

> We [officers] all ran to the rear of the residence. I saw a male and female (later identified as Patrick and Diane Bentley) on the ground. Det. Pfeifer told me that he learned the Gosztyla's [sic] were in the upstairs bedroom. As Det. Griggs stayed with Patrick and Diane Bentley, the rest of us searched the very spacious residence until we found the stairs. We then went upstairs. I followed Det. Pfeifer as we went to the bedroom which had a blanket over the door as well as a sliding bar door which was leaning against the opening. I followed Det. Pfeifer as we entered the room. As Det. Pfeifer was attempting to get control of which I immediately recognized as Richard Gosztyla, I stepped on the bed and directed the female who I recognized as Chantell Gosztyla but with shorter hair into a prone handcuffing position. As I handcuffed Chantell Gosztyla, I saw Det. Pfeifer, Det. Lemus and Det. Burnette *still struggling to handcuff Richard Gosztyla*. When they were both handcuffed, we ultimately brought them to separate vans.

27 ECF No. 70 at Ex. A, p. 3 (emphasis added).
28      Plaintiff correctly points out that defendant French's statement in his arrest report

7

contradicts his declaration. In the arrest report, defendant specifically states that he saw the other officers "still struggling to handcuff Richard Gosztyla." *Id.* In his declaration, however, defendant states that he did not see the other officers, because they were behind him. ECF No. 52-5 at ¶ 16.

Viewing the evidence in the light most favorable to plaintiff, a reasonable jury could find that defendant French was aware of a need to intervene in plaintiff's arrest, which plaintiff alleges was conducted with excessive force that caused him injury. Although it is undisputed that defendant French did not personally arrest plaintiff or use any force on him, there is a genuine issue of material fact as to whether defendant French observed other officers using excessive force in effecting the arrest of plaintiff and had an opportunity to intervene. While he denies in his declaration witnessing the other officers arrest plaintiff (ECF No. 52-5 at ¶ 16), French stated in the arrest report that he saw the other officers struggling while attempting to handcuff plaintiff. ECF No. 70 at Ex. A, p. 3. Defendant also states in his declaration that plaintiff's wife did not resist arrest, which could suggest to a reasonable jury that defendant French had the opportunity to intervene in plaintiff's arrest.[1]

In sum, the evidence presented is sufficient to create a genuine dispute as to whether defendant French was aware of a need to intervene and had a reasonable and realistic opportunity to do so. A rational trier of fact could conclude that defendant French, who originally stated that he observed the other officers struggling to arrest plaintiff, and also stated that his arrest of plaintiff's wife took place without resistance, was aware of the alleged excessive force and was in a position to intervene in it, at least verbally. Accordingly, defendant French's motion for summary judgment should be denied.

### V.     Recommendation

For the foregoing reasons, it is RECOMMENDED that defendant French's motion for summary judgment be DENIED.

---

[1] The court emphasizes that it is not concluding at this juncture that plaintiff's arrest was actually conducted with excessive force. As defendants in this matter acknowledge, "the reasonableness of the amount of force used in response to plaintiff's resistance is a jury question." ECF No. 69 at p. 3. Indeed, if reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing § 2255 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: November 13, 2024

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE